## COLLINS *v.* COLLINS.

(Division A.  Nov. 6, 1933.  Suggestion of Error Overruled Feb. 12, 1934.)

[150 So. 660.  No. 30758.]

**Welch & Cooper,** of Laurel, for appellant.

**D. B. Cooley** and **Shannon & Schauber,** both of Laurel, for appellee.

Argued orally by **Ellis B. Cooper,** for appellant, and by **D. B. Cooley,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Floyd O. Collins, as receiver, filed a bill, for and on behalf of the creditors of the corporation, the Continental Electric & Manufacturing Company, in the chancery court seeking to recover from J. L. Collins and numerous others the balance of the unpaid subscriptions of stock in said corporation, alleging its insolvent condition, the amount of balance due by each of the several defendants as the unpaid subscriptions of stock, and attached thereto a copy of the note executed by each of them, and a copy of the written subscription for stock executed by the several subscribers on November 7, 1929. The bill further alleged, in effect, that these unpaid subscriptions for stock were the only assets to which the creditors of the company could look for payment of the debts of the said insolvent corporation.

J. L. Collins appeared and filed his answer, denied that he was a stockholder of said corporation, but admitted that he executed the note and written subscription for stock, and then set up, by way of an affirmative defense, first, that the organization of the company was placed in the hands of one Jolly, who made grossly false and fraudulent representations for the purpose and with the intent to deceive the public; that such representations

were made to him, the said Jolly telling the appellant that the proposed corporation had a contract with the Mississippi Power Company by which the appliances manufactured by the proposed corporation were to be sold to said power company, thereby reducing the selling cost of the appliances to be manufactured by said corporation; that this statement was wholly untrue and false; and, second, he then set up that in May, 1930, having discovered that the representations made to him were false, he approached Jolly and demanded a return of his money and a rescission of his contract; that Jolly agreed with him that the corporation would retain his money, and that Jolly, as an individual, would sell the balance of the stock to some one else; and that, afterwards, Jolly reported to him that this had been done. Appellant had paid one hundred twenty-five dollars on his stock.

There was a motion to strike the affirmative matter from the answer filed on behalf of the appellee here, the complainant in the court below, which was sustained by the court.

So far as these allegations are concerned, except a broad, general allegation of fraud, there was no amended answer filed after the court had eliminated these defenses from the answer.

Notwithstanding the state of the pleadings, on the trial of the case, the appellant offered to prove substantially the allegations of the answer which had been stricken therefrom. Objection was made thereto, and was sustained by the court.

We are relieved from a discussion of the serious question as to whether or not one may become a stockholder in a corporation and allow his status to remain unchanged, and then set up on the insolvency of the corporation as a defense to a suit against him, on behalf of creditors of the corporation, for the balance remaining

unpaid on his stock subscription, the fraud of the agent who induced him to subscribe therefor.

Whatever the rule may be, it is unnecessary for us to announce a conclusion upon that proposition, for the reason that the action of the court below in striking the affirmative defensive matter from the answer was correct. Nowhere in the allegations of fraud is it alleged that the representations were the controlling cause upon the faith of which the appellant subscribed for this stock. See Clopton v. Cozart, 13 Smedes & M. 363, and Black on Rescission and Cancellation, vol. 1, page 47, sec. 24, where the author said: "There must also be an intention to deceive or delude, or an intention that the fraud practiced shall influence the action of the other party, and there must be the fact that it did influence him and induce him to enter into the contract or obligation." See, also, page 300, sec. 110, Id.

It is also quite true that where there is an effort to set up fraud which would entitle a subscriber to stock in a corporation to a rescission or cancellation on account of fraud, that the defrauded person must allege and prove that he exercised due diligence in discovering the fraud, and must promptly repudiate the contract. In other words, he cannot indifferently allow his subscription to remain unpaid until the corporation becomes insolvent, but he must exercise diligence to discover the fraud perpetrated upon him, and he must be diligent in repudiating it. There seems to be no disagreement in the authorities on this point.

Counsel for the appellant frankly conceded that there was no release of Collins from the payment of the balance of his stock subscription. He now seeks to have this court, by some process of reasoning, adopt the agreement with Jolly as a novation of his debt. There is nothing in the statement set forth in the pleadings to indicate a novation of his debt.

Affirmed.